## CANADIAN ACE BREWING CO., Plaintiff,

v.

## ANHEUSER–BUSCH, INCORPORATED, Defendant.

### No. 77 C 4198.

United States District Court, N. D. Illinois, E. D.

April 10, 1978.

Allen H. Schultz, Jay L. Schultz, Schultz & Schultz, Chicago, Ill., for plaintiff.

C. Frederick Leydig, Paul L. Ahern, Leydig, Voit, Osann, Mayer & Holt, Ltd., Chicago, Ill., Harold F. Baker, Terrence C. Sheehy, Peter E. Moll, Scott E. Flick, Howrey & Simon, Washington, D. C., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Canadian Ace Brewing Co. (Canadian Ace), a dissolved Illinois corporation which had been engaged in brewing and distributing malt beverages, brings this action against Anheuser-Busch, Inc. pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, alleging that defendant has engaged in monopolization, price fixing and price discrimination in the malt beverage industry. Before us at this time are defendant's motions to dismiss or to strike. For the reasons herein stated, we grant the motion to dismiss.

### I.

Canadian Ace alleges, without specification, that, some time prior to 1967, Anheuser Busch, Inc., the largest manufacturer and seller of malt beverages in the United States, began and has continued to monopolize the malt beverage trade, has entered into contracts, combinations and conspiracies to fix the prices of its malt beverages, and has discriminated in price between different wholesaler purchasers of its malt beverages. As a result of these alleged actions, Canadian Ace claims that it was forced out of business. It seeks damages in a trebled total of $45,000,000.

Defendant moves to dismiss on the ground that Canadian Ace lacks capacity to bring this suit inasmuch as Illinois corporate law forbids dissolved corporations to sue or be sued after two years following the date of dissolution. Canadian Ace concedes the existence of this rule, but states that it was unaware of defendant's actions due to the latter's fraudulent concealment, which concealment, it contends, tolled the two-year survival statute prior to discovery of defendant's alleged conduct. Anheuser-

Busch counters with a motion to strike the allegations in the complaint dealing with the alleged fraudulent concealment.

## II.

On November 28, 1972, Canadian Ace filed with the Secretary of State of Illinois a statement of intent to dissolve, and, on December 6, 1972, following the filing of articles of dissolution, the Secretary of State issued a certificate of dissolution. Section 94 of the Illinois Business Corporation Act, Ill.Rev.Stat. ch. 32, § 157.94 provides:

> The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, . . . shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name.

In the absence of any exceptional factors, therefore, as Canadian Ace's complaint was not filed until November 11, 1977, the suit would be barred by section 94.[1] Canadian Ace argues, however, that, as a matter of public policy, we should exercise our equitable powers and toll the two-year survival period due to Anheuser-Busch's alleged affirmative acts of fraudulent concealment. Plaintiff further asserts that this is a case of first impression and, in such circumstances, we should act in such a way as to uphold the federal claim for relief.

■ We begin with a few general observations on the question of corporate standing after dissolution. At common law, the dissolution of a corporation terminated its legal existence. It could neither sue nor be sued and even pending proceedings abated. See *2 Mod. Business Corp. Act. Ann.* § 105, ¶ 2 (2d ed. 1970). Ultimately, every jurisdiction adopted statutes allowing actions to be brought by or against dissolved corporations and preventing actions from abating on dissolution, whether voluntarily or involuntarily or because of charter expiration. Even when a statute continues the existence of a corporation for a certain period, however, it is generally held that the corporation becomes defunct upon the expiration of such period, and, in the absence of a provision to the contrary, no action can afterwards be brought by or against it and must be dismissed. 16A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 8144 (1962 Rev. Vol. by M. Wolf).

■ Plaintiff, in invoking the principle of "fraudulent concealment," attempts to apply to section 94 the tolling principle applied to statutes of limitations. Although Canadian Ace discusses the difference in "procedural" and "substantive" (*i. e.*, jurisdictional) statutes of limitations, noting that fraudulent concealment was originally considered applicable only to the former but is increasingly being applied to the latter, the Illinois courts have made clear that section 94 is a survival statute rather than a statute of limitations. And this is the characterization given it by courts of this State. The Appellate Court for the First District, discussing Section 79 of the General Corporation Act of 1919, the predecessor to the present section 94, stated: "There is no dispute that by the common law doctrine of the status of a corporation after its dissolution for any cause, the corporation has no legal existence, and the real estate held by the dissolved corporation reverts to the grantors or donors, and the personal property escheats to the king, and that no right of action can be maintained to enforce a claim against a defunct corporation. In the United States, however, this common law doctrine has been so modified that the property of a dissolved corporation is to be used for the

---

1. Fed.R.Civ.P. 17(b) provides that the capacity of a corporation to sue or be sued is determined by the law of the state under which the corporation was organized. Our consideration of Canadian Ace's capacity, therefore, is governed by Illinois law.

benefit of the creditors and stockholders after dissolution, and generally, by a saving clause, stockholders or creditors may maintain an action for that purpose, and in order to maintain an action it must be filed within the time fixed for such purpose. In the instant case, by the saving clause, complainant was granted statutory right to maintain an action of the character before this court. * * * " *People v. Parker*, 30 Ill.2d 486, 197 N.E.2d 30, 31 (1964) (citations omitted)

It would appear that any application of the fraudulent concealment doctrine must be made by analogy to the statute of limitations situation and involve invocation of this Court's equitable powers. We conclude, however, that under the various judicial constructions of section 94, we have no authority to set aside its provisions.

Canadian Ace in its brief cites the case of *Hodgson v. Lodge 851, Int'l Ass'n of Mach. & Aerospace Wkrs.*, 454 F.2d 545 (7th Cir. 1971), which states in a footnote, 454 F.2d at 548 n. 3: "Moreover, it is clear that all statutory periods can be tolled in the case of fraudulent concealment. *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 [1874], *Exploration Co. v. United States*, 247 U.S. 435 [38 S.Ct. 571, 62 L.Ed. 1200] [1918]."

█ To avoid any misconception about this statement, it should be noted that the case dealt solely with statutes of limitations and the Seventh Circuit was concerned with the substantive-procedural statute of limitations distinction. We do not think, therefore, that this rather generalized statement made in the context of statutes of limitations is applicable here. As the court in *Litts v. Refrigerated Transport Co.*, 375 F.Supp. 675, 678 (M.D.Pa.1973) found:

Moreover, it must be emphasized that the corporate extension statute is not a statute of limitations. . . . For the purposes of this case, the importance of that statement seems to lie in this: A statute of limitations begins to run upon the accrual of a party's cause of action, while the corporate statute starts running upon the dissolution of the corporation.

█ The purposes of a statute of limitations and a survival statute are also dissimilar. The former "were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to protect fraud the means by which it is made successful and secure." *Bailey v. Glover, supra*, 88 U.S. (21 Wall.) at 349.

█ Corporate survival statutes, however, were enacted both to aid in the winding up process of a corporation following its dissolution and also to prevent the abuse whereby a corporation would dissolve in order to escape creditors.

We additionally note that, although the doctrine of fraudulent concealment with respect to statutes of limitations has its foundations at common law, the Illinois legislature found it necessary to enact a specific statutory provision on the subject in the limitations chapter. Ill.Rev.Stat. ch. 83, § 23. No parallel enactment exists in the Business Corporation Act with respect to the survival statute.

The cases are legion for the proposition that the right of a corporation to exist beyond its date of dissolution is purely one of statutory origin. In *Ruthfield v. Louisville Fuel Co.*, 312 Ill.App. 415, 38 N.E.2d 832, 837 (1942), the court, construing section 94, stated:

It is the law of this state that the right to maintain an action against a defunct corporation is wholly controlled by statute, and that such right must be exercised within the time fixed by the legislature.

The United States Supreme Court, in a discussion of the predecessor of the present Illinois statute and similar provisions, stated:

The decisions of this court are all to the effect that a private corporation in this country can exist only under the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person. There must be some statutory authority for the prolongation of its life, even for litigation purposes. *Chicago Title and Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 124–25, 58 S.Ct. 125, 127, 82 L.Ed. 147 (1937).

In *O'Neill v. Continental Illinois Co.*, 341 Ill.App. 119, 93 N.E.2d 160, 168 (1950), plaintiff alleged that the dissolved corporate defendant had made "false and untrue" statements in its articles of dissolution by stating that it had discharged all of its debts when it had, in fact, failed to deliver to plaintiff $350,000 in United States Treasury Certificates. The court stated:

In our judgment the language of Section 94 is clear and unambiguous. Under that section any right of claim existing on behalf of a corporation or any liability incurred by a corporation prior to its dissolution may be enforced if the action is commenced "within two years after the date of such dissolution." We have neither the power or desire to nullify the plain and wholesome provisions of Section 94.

Finally, we note that the Illinois courts have held Section 94 to be applicable even in suits in equity. *Koepke v. First National Bank of DeKalb*, 5 Ill.App.3d 799, 284 N.E.2d 671 (1972). One Illinois court has discussed as dictum the possibility that a dissolved corporation might be equitably estopped from *denying* its existence, as when it has engaged in a series of intentional misrepresentations about its activities leading an unwary potential creditor to believe that the corporation was in existence.[2]

There is no question here, however, of anyone being misled as to a corporation's existence. What plaintiff in effect contends is that it possessed an asset in the nature of a claim against the defendant of which it was unaware during the period of its existence including the two-year survival period. Now from the grave, so to speak, it seeks to pursue that claim. We find no basis for concluding that we have the power to raise it from the dead to enable it to do so.

 We find, therefore, that the principles of fraudulent concealment have no application to this action brought by a corporation dissolved nearly five years prior to the filing of the complaint. Accordingly, we grant Anheuser-Busch's motion to dismiss.[3]

An appropriate order will enter.

---

**2.** See *Ruthfield v. Louisville Fuel Co., supra*, 38 N.E.2d at 838–39.

**3.** Our decision on the motion to dismiss eliminates the necessity of ruling on defendant's alternate motion to strike. We emphasize that

our holding in this action relates solely to the capacity of Canadian Ace to bring suit and we express no opinion as to the ability of the stockholders of the dissolved corporation to bring actions in their individual capacities.